UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SUNRISE HOSPITAL AND MEDICAL CENTER, LLC,<br><br>                 Plaintiff,<br>vs.<br><br>LOCAL 1107 OF THE SERVICE EMPLOYEES INTERNATIONAL UNION,<br><br>                 Defendant. | Case No.: 2:24-cv-01247-GMN-MDC<br><br>**ORDER GRANTING IN PART AOND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION FOR PRELIMINARY INJUNCTION** |

Pending before the Court is the Motion to Dismiss, (ECF No. 12), filed by Defendant Local 1107 of the Service Employees International Union. Plaintiff Sunrise Hospital and Medical Center filed a Response, (ECF No. 20), to which Defendant filed a Reply, (ECF No. 24). Also pending before the Court is Plaintiff's Motion for Preliminary Injunction, (ECF No. 11), to which Defendant filed a Response, (ECF No. 22), and Plaintiff filed a Reply, (ECF No. 25). Because this Court has jurisdiction over the claim, and because Plaintiff has plausibly alleged that Defendant breached only some of the identified portions of the parties' collective bargaining agreement, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss. Additionally, because Plaintiff has not demonstrated that all *Winter* elements are met, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

I.    <u>BACKGROUND</u>

This case arises from Defendant's alleged breach of the parties' collective bargaining agreement ("CBA") effective through June 16, 2023 through March 31, 2026. (Compl., ECF No. 1). Plaintiff Sunrise is the largest acute care facility in Las Vegas, and is an employer as defined by the National Labor Relations Act, 29 U.S.C. § 152(2). (*Id.* ¶¶ 3, 5). Defendant Local 1107 is a labor organization as defined by the National Labor Relations Act and

represents approximately 3,277 of Plaintiff's employees in a combined bargaining unit. (*Id.* ¶¶ 6, 7).

Earlier this year, Defendant gave notice to Plaintiff requesting access to the hospital for the purpose of distributing Union literature. (*Id.* ¶ 13). However, Plaintiff alleges that Defendant did not provide Plaintiff with a copy of the literature that it planned to distribute. (*Id.* ¶ 12). Defendant distributed to represented bargaining unit employees a "Defendant edition" of the CBA that was not previously agreed to by Plaintiff. (*Id.* ¶ 15). The front cover of Defendant's distributed agreement includes three photographs of individuals with placards stating, in four languages, "HCA Healthcare Put Patients Before Profits." (*Id.*). The back cover has a graphic of a raised first and the words "respect us and pay us." (*Id.* ¶ 17). After Defendant distributed their edition of the CBA, Plaintiff advised Defendant that the materials violated the CBA mutual respect obligation and directed Defendant to immediately collect and remove the covers from each of the union printed CBAs. (*Id.* ¶ 18). Defendant declined to remove the covers that Plaintiff objected to and disagreed that the covers violated the CBA. (*Id.* ¶ 19). Plaintiff thereafter brought this breach of contract case seeking injunctive and declaratory relief.

II.     **LEGAL STANDARD**

   A. **Motion to Dismiss 12(b)(1)**

"Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). As such, "[i]t is to be presumed that a cause lies outside this limited jurisdiction... and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted); *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1256 (9th Cir. 2022) (same). A

party may challenge a claim for relief for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B. Motion to Dismiss 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### C. Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (internal quotation marks omitted).  The Ninth Circuit has additionally held that when likely success on the merits cannot be determined, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks omitted).

### D. **DISCUSSION**

Defendant moves to dismiss the entirety of Plaintiff's Complaint.  Defendant first argues that this Court does not have jurisdiction over this claim because it raises issues within the

exclusive jurisdiction of the National Labor Relations Board ("NLRB"). (Mot. Dismiss ("MTD"), ECF No. 12).  Defendant next argues that Plaintiff failed to plausibly allege a breach of the CBA, and that Defendant's conduct is protected speech authorized by the National Labor Relations Act ("NLRA"). (*Id*. 2:5–15).  Lastly, Defendant argues that the relief sought by Plaintiff should not be granted. (*Id*. 2:15–16).

Plaintiff seeks a preliminary injunction requiring Defendant to immediately cease distributing its edition of the CBA and requiring Defendant to collect and destroy all copies that have been distributed. (Mot. Prelim. Inj. 1:18–27, ECF No. 11).  The Court begins its analysis with Defendant's Motion to Dismiss, and then moves to Plaintiff's Motion for Preliminary Injunction.

**A. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Defendant argues that the Complaint should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. (MTD 7:24–21).  Defendant contends that this case is within the exclusive jurisdiction of the NLRB because this case is a "labor dispute disguised as a breach of contract case," and therefore outside of the Court's jurisdiction under *San Diego Building Trades Council, etc. v. Garmon*, 359 U.S. 236, 245 (1959). (Reply to MTD 7:24–8:21, EFC No. 24).  Plaintiff responds that, as a case brought under Section 301(a) of the Labor Management Relations Act ("LMRA"), *Garmon* does not apply. (Resp. to MTD 6:12–21, ECF No. 20).

"The NLRB has exclusive jurisdiction over some labor law questions and primary jurisdiction over others." *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., Steamfitters & Refrigeration Union, Loc. 342, AFL-CIO v. Valley Engineers,* 975 F.2d 611, 613 (9th Cir. 1992), *as amended* (Oct. 16, 1992).  In the areas of the NLRB's jurisdiction, "the district courts must tread lightly." *Id.*  "[T]he doctrine of primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first

instance by the National Labor Relations Board." *Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Dist.*, 689 F.2d 1339, 1342 (9th Cir. 1982).

District courts do, however, have jurisdiction of "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." LMRA § 301(a), 29 U.S.C. § 185(a). Section 301(a) has a "strong policy favoring judicial enforcement of collective-bargaining contracts . . . [that] sustain[s] the jurisdiction of the district courts over enforcement suits even though the conduct involved was arguably or would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976). Section 301(a) is therefore an "exception to the rule" in *Garmon*. *Int'l Bhd. of Elec. Workers, Loc. 532 v. Brink Const. Co.*, 825 F.2d 207, 211 n.6 (9th Cir. 1987).

Plaintiff brings its breach of contract claim under section 301(a). (Compl. ¶1). This Court therefore has jurisdiction. 29 U.S.C. § 185(a). Even if this dispute could arguably constitute unfair labor practices, as Defendant argues it does, this Court maintains jurisdiction due to the "strong policy favoring judicial enforcement of collective-bargaining contracts." *Hines*, 424 U.S. at 562. Accordingly, the Court DENIES Defendant's Motion to Dismiss for lack of jurisdiction under 12(b)(1).

**B. 12(b)(6) Motion to Dismiss for Failure to State a Claim**

Defendant next moves to dismiss Plaintiff's breach of contract claim because it argues that Plaintiff's Complaint does not state facts sufficient to plausibly conclude that Defendant violated any of the CBA provisions identified. (MTD 2:5–9). Defendant contends that each of the CBA sections that Plaintiff claims it violated is either unenforceable or inapplicable. (*Id.* 10:1–4).[1] The Court addresses each allegedly violated section of the CBA in turn.

---

[1] Plaintiff's Complaint includes only one claim for breach of contract. (Compl. ¶¶ 20–27). That single claim asserts that Defendant violated five separate sections of the CBA. (*Id.*). The Court construes this as five separate claims, with one claim for each section of the CBA that Plaintiff alleges was breached.

### 1. CBA Section 3.1 (Bulletin Boards)

Plaintiff claims that Defendant's conduct violated Section 3.1 of the CBA. (Compl. ¶12). Defendant argues that Section 3.1 is inapplicable to the conduct at issue because it addresses only the information that may be posted on bulletin boards. (MTD 10:5–17). Section 3.1 is entitled "Bulletin Boards" and describes an agreement that the Hospital will provide six bulletin boards for the posting of Union notices. (CBA, Ex. 1 to Compl., ECF No. 1-2). It provides that "[n]o materials will be posted that are critical of any Hospital employee or of any policy relating to patient care or the delivery of patient care at the Hospital." (*Id.*). Because Section 3.1 describes the parties' agreements related to bulletin board postings specifically, and Plaintiff does not allege that Defendant's CBAs were posted on the bulletin boards, the Court finds that Plaintiff did not plausibly allege that Defendant's conduct violated Section 3.1. The Court therefore DISMISSES this claim without prejudice. Because it is not clear that amendment would be futile, the Court grants leave to amend this claim.

### 2. CBA Section 3.3 (New Member Orientation)

Plaintiff also claims that Defendant's conduct violated Section 3.3 of the CBA. (Compl. ¶ 12). Defendant argues that Section 3.3. applies only to new employee orientation meetings, and thus does not apply to Defendant's actions in this case. (MTD 10:18–26). Plaintiff responds that the Court can draw an inference that the materials were distributed during orientation because of the "widespread distribution of the offending materials." (Resp. to MTD 8:26–28).

Section 3.3 provides that the Hospital will allot 30 minutes during the general orientation for new employees for a presentation by Union Representatives. (CBA at 10, Ex. 1 to Compl.). It states that the parties understand that the "purpose of this meeting is to present non-controversial information concerning the Union to the orientees." (*Id.*). Section 3.3's limitation on controversial information clearly applies only to the information presented by the

Union at new employee orientations. While Plaintiff asks the Court to infer that Defendant distributed these materials during orientation based on the alleged "widespread distribution" of the materials, Plaintiff did not allege in its Complaint that Defendant distributed these materials at new employee orientation. Without such an allegation, Plaintiff has not plausibly alleged that Defendant's conduct violated Section 3.3. The Court therefore DISMISSES this claim without prejudice. However, because this defect is capable of correction, the Court grants leave to amend this claim.

### 3. Article 6 (Distribution of Union Literature)

Plaintiff further alleges that Defendant's actions violated Article 6 of the CBA. (Compl. ¶ 12). According to Plaintiff, Defendant promised in Article 6 not to make derogatory comments about Plaintiff in any literature distributed by Defendant to the represented bargaining unit employees. (*Id.*).

Defendant first argues that Article 6 does not apply because it provides rules regarding the distribution of "Union literature." (MTD 13:5–8). Defendant contends that the CBA it distributed does not constitute "Union literature" because it is an agreement that was negotiated and approved by both parties. (*Id.* 13:11–17). Plaintiff responds that it plausibly alleged that the CBA, or at least the covers that Defendant added to the CBA, are "Union literature" such that Article 6 would apply. (Resp. to MTD 9:8–10). Plaintiff did in fact make this allegation in its statement that "Defendant . . . gave notice to Plaintiff requesting access to Plaintiff's Hospital and Medical Center for the purpose of distributing Union literature." (Compl. ¶ 13).

Defendant next argues that, even if the CBA was "Union literature," Article 6 applies only to Union literature distributed *on hospital property*. (MTD 13:21–24). Defendant contends that Plaintiff did not allege that the literature was distributed on hospital property. (*Id.*). Once again, Plaintiff did make this allegation in its statement that it "gave notice to Sunrise requesting access to Sunrise's Hospital and Medical Center for the purpose of

distributing Union Literature." (Resp. to MTD 9:10–18).  Because Plaintiff did allege that the materials were Union literature and distributed on hospital property, the Court finds that Article 6 plausibly applies to Defendant's conduct.

Defendant lastly argues that, as a matter of law, Plaintiff cannot prohibit distribution of Union literature in nonworking areas of its property during nonworking time. (MTD 13:17–21). The Supreme Court has historically approved the NLRB's presumption that an employer's rule prohibiting employee distribution of literature during nonworking time in nonwork areas is invalid unless special circumstances make the rule necessary to maintain production or discipline. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 802 n.10 (1945).  But this presumption does not apply here: Plaintiff has not imposed a rule that prohibits employee distribution of literature during nonworking time in nonworking areas.  Plaintiff is challenging Defendant's ability to distribute union literature anytime with statements that allegedly violates the CBA, not instituting a place and time rule that Defendant cannot distribute literature in nonworking areas during nonworking time.  Accordingly, the Court finds that Plaintiff has plausibly alleged that Article 6 applies to Defendant's conduct of distributing Union literature on hospital property.  Article 6 requires that all literature being distributed will comply with the provisions of Article 58.  The Court thus turns next to the question of whether Plaintiff plausibly alleged that Defendant's literature violated Article 58.

### 1. Article 58 (Mutual Respect and Commitment)

Plaintiff most centrally alleges that Defendant violated Article 58 of the CBA. (Compl. ¶¶ 12, 18, 22).  Defendant argues that it cannot have violated Article 58 because the language in the CBA is aspirational and imprecise, and therefore it is unenforceable. (MTD 15:16–16:2). Alternatively, Defendant asserts that the parties didn't intend Article 58 to prohibit the activity on which Sunrise bases its Complaint. (*Id.* 19:6–9).  The crux of the dispute rests on whether the Defendant's slogan is "derogatory" within the meaning of Article 58.

Article 58 provides that the parties agree to "conduct their relationship in a manner that reflects mutual respect and a joint commitment to problem-solving." (CBA at 67, Ex. 1 to Compl.). It goes on to state that "in any communications they shall focus on the merits of the particular issue in debate, address differences in a positive manner and not engage in personal attacks or make derogatory comments about their respective organizations, affiliates and leadership." (*Id.*). That language specifically prohibits making derogatory comments in communications, and Defendant provides no binding precedent to support its argument that the language in Article 58 is unenforceable. (*Id.* 15:14–16:2). The Court therefore finds that Defendant has not shown that this claim should be dismissed because Article 58 is unenforceable.

Plaintiff alleges that Defendant's conduct violated Article 58 by distributing materials with a derogatory slogan on them. (Compl. ¶¶ 22, 23). Because Plaintiff has alleged that the conduct in question was derogatory, the Court must take Plaintiff's factual allegations as true, and the Article's text prohibits derogatory statements about the other party, the Court finds that Plaintiff has met the pleading standard. Defendant's argument that the language on its materials was not derogatory is better raised at the summary judgment stage of proceedings.

### 2. Article 61 (Shared Vision)

Plaintiff alleges that Defendant's conduct violated Article 61. (Compl. ¶ 11). Defendant contends that Article 61 is irrelevant for purposes of determining whether any substantive violation of the CBA has occurred because it states that is it "not intended to create any substantive rights, duties, or obligations on the part of either party." (MTD 14:2–10). In the alternative, Defendant argues that Article 61 would be unenforceable because it contains only "aspirational statements." (*Id.* 14:11–15:13).

Article 61 is entitled "Shared Vision" and provides that the parties share a commitment to "act[] in ways that promote respect for all persons and each other." (CBA at 70, Ex. 1 to

Compl.). The second paragraph of Article 61 states that "[n]othing contained in this Article is intended to create any substantive rights, duties, or obligations on the part of either party." (*Id.*). Because the Article states that it does not create any rights or duties, Defendant's conduct cannot have violated any duties or rights under Article 61. Thus, this Court finds that Defendant's conduct could not have breached Article 61 of the CBA. Because amendment of this claim would be futile, the Court DISMISSES this claim without leave to amend.

In sum, the Court dismisses the claims that Defendant's conduct violated Section 3.1, Section 3.3, and Article 61, and grants leave to amend the Section 3.1 and 3.3 claims. The Court finds that Plaintiff has plausibly alleged that Defendant's conduct violated the CBA Article 6 and Article 58. The Court therefore DENIES in part Defendant's Motion to Dismiss.

### C. Preliminary Injunction

Plaintiff seeks a preliminary injunction order against Defendant that (1) requires Defendant to immediately cease printing, distributing, and publishing the parties' CBA bound with the front and back cover contained in Exhibit 2 of the Complaint, and (2) requires Defendant to collect and destroy all copies of the CBA that have been distributed to date.

#### i. Standard for Obtaining a Preliminary Injunction

Although the parties agree that *Winter*, 555 U.S. 7, provides the governing four-prong test for a preliminary injunction, they dispute the weight of Plaintiff's burden. Defendant argues that Plaintiff must show that all four factors "weigh heavily and compellingly" in Plaintiff's favor, because the injunctive relief sought will "provide the movant substantially all the relief he may recover after a full trial on the merits." (Resp. to Prelim. Inj. 6:11–16). Defendant cites only a Tenth Circuit case and a district court case in which the court rejected the heightened standard that Defendant argues for here. (*Id.*) (citing *SCFC ILC, Inc. v. Visa, USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991); *Allen v. County of Lake*, 71 F. Supp. 3d 1044 (N.D. Cal. 2014)). Defendant provides no support for its argument that, under Ninth Circuit

precedent, a heightened standard should apply. The Court finds that Plaintiff is not required to meet a heightened standard that all four factors "weigh heavily and compellingly" in Plaintiff's favor.

### ii. Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits, Plaintiff must show that it is likely to succeed on its breach of contract claim. Courts interpret collective bargaining agreements "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015). "In this endeavor, as with any other contract, the parties' intentions control." *Id.* "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id.* (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012) (Williston)).

Plaintiff first asserts that Defendant failed to provide it with a copy of the Union version of the CBA before distributing it, violating of Section 6.1.2 of the CBA which requires that "[a] copy of the literature being distributed [be] delivered to the Director of Labor relations at the time of distribution." (Mot. Prelim. Inj. 8:2–6). Defendant responds that it did provide a copy of the literature to Plaintiff on the dates they were distributed. (Resp. to Mot. Prelim. Inj. 15:18–19). Defendant provides two emails sent to Plaintiff's Director of Labor relations, one on each day that Defendant distributed the CBAs to its members. (*Id.* 15:20–22). Defendant attached a photograph of the front cover of the CBA. (Emails dated June 7, 2024 and June 6, 2024, Ex. G. to Resp. to Prelim. Inj., ECF No. 23-7). Because Defendant provides evidence that contradicts Plaintiff's argument, and Plaintiff does not present its own evidence nor contest the validity of Defendant's evidence, Plaintiff has not met its burden of showing a likelihood that it will succeed on this argument.

Plaintiff also argues that Defendant breached several sections of the CBA due to the language Defendant included on the covers. (Mot. Prelim. Inj. 8:14–25).  As discussed above, Plaintiff contends that the language on the front and back covers ("HCA Healthcare Put Patients Before Profits" and "respect us and pay us") violates Article 6 and Article 58 of the CBA. (*Id.* 8:21–25).  Plaintiff asserts that Defendant's distributed materials contained "derogatory" language that is "critical of Plaintiff's commitment and policies relating to patient care," and is thus "derogatory, controversial, and divisive." (Compl. ¶¶ 22, 23).  In response, Defendant argues that the language of Article 58 is not sufficiently clear to be enforced. (Resp. to Prelim. Inj. 16:21–22).   Defendant further argues that it would not apply to the conduct here because it governs only the ways the parties conduct their relationship with each other, and this was not a communication between the parties. (*Id.* 17:1–7).  Lastly, Defendant denies that the slogan is derogatory and argues that the parties' prior conduct shows that Plaintiff's interpretation of Article 58 in this case is inconsistent with the parties' prior interpretation of this section. (*Id.* 2:15–3:10).

Article 6 requires that all literature distributed by the parties comply with the provisions of Article 58. (CBA at 14, Ex. 1 to Compl.).  Article 58 provides that the parties agree to "conduct their relationship in a manner that reflects mutual respect and a joint commitment to problem-solving." (*Id.* at 67).  It further requires that "in any communications they shall focus on the merits of the particular issue in debate, address differences in a positive manner and not engage in personal attacks or make derogatory comments about their respective organizations, affiliates and leadership." (*Id.*).  Article 58 specifically states that the parties will not "make derogatory comments" about the other party. (*Id.*).

Even assuming that Article 58 is enforceable and applies to Defendant's conduct here, Plaintiff has not shown that it is likely to succeed on its claim that the cover language violates the CBA.  Plaintiff makes conclusory statements that the language on the covers is

"derogatory" in violation of Article 58 but provides no evidence to support this claim. (Mot. Prelim. Inj. 8:14–9:1).  Meanwhile, Defendant presents evidence that it has used the same photos and similar slogans on its materials in the past without objection from Plaintiff. (Resp. to Mot. Prelim. Inj. 2:15–3:10).  Defendant attaches the cover of a previous CBA distributed from April 1, 2020, to March 31, 2023, that includes a photograph with a sign stating "Respect us, Protect us, Pay us" and another sign stating "HCA Profits 2020 - $3.75 billion (up 7% from 2019)." (Previous CBA Cover, Ex. B to Resp. to Mot. Prelim. Inj., ECF No. 23-2).  Defendant further points to previous union materials it has posted in the hospital bulletin boards that include the same slogan at issue in this case.  (Emails, Exs. C, D to Resp. to Mot. Prelim. Inj., ECF Nos. 23-3, 23-4).

   This evidence tends to show that the parties did not previously understand these slogans to be "derogatory."  And because the Court looks to the intent of the parties to interpret the CBA, this evidence supports a finding that the parties did not intend for Article 58 to prohibit the usage of the slogans at issue here. *See M & G Polymers*, 574 U.S. at 435.  Plaintiff provides no response to this argument and presents no evidence to support its contention that the slogans on Defendant's edition of the CBA violate Article 58.  The Court therefore finds that Plaintiff has not met its burden of showing a likelihood of success on the merits.  Because it is a threshold issue, if plaintiff fails to show likelihood of success, the Court generally need not consider the other three *Winter* elements. *Garcia v. Google, Inc.*, 786 F3d 733, 740 (9th Cir.

2015); *Baird v. Bonta*, 81 F4th 1036, 1040 (9th Cir. 2023).[2] Accordingly, the Court finds that Plaintiff has not met its burden of showing a likelihood of success on the merits, and therefore DENIES Plaintiff's Motion for Preliminary Injunction.

///

///

///

///

///

///

///

///

///

///

///

///

---

[2] Even if Plaintiff did show a likelihood of success on the merits, Plaintiff would still not successfully meet its burden for a preliminary injunction. Plaintiff fails to show that it is likely to suffer irreparable injury in the absence of an injunction. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). Plaintiff argues that "[e]vidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Herb Reed Enterprises, LLC v. Florida Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). While the Court agrees that loss of control over business reputation and damage to goodwill *could* constitute irreparable harm, Plaintiff has presented no evidence to support such a finding in this case. Plaintiff relies on "conclusory statements regarding the harm that [it] *might* suffer," but provides no evidence that it has or will suffer loss of control over its reputation. *See id.* (finding that the district court abused its discretion in granting a preliminary injunction in reliance on "unsupported and conclusory statements regarding the harm that [plaintiff] *might* suffer"). Plaintiff also argues that potential disruptions to patient care in the medical context warrant injunctive relief. (Mot. Prelim. Inj. 9:20–10:5). Unlike the cases Plaintiff cites to support its patient care disruption argument, Plaintiff presents no evidence of current or likely disruptions to patient care. *See Rodde v. Bonta*, 357 F.3d 988, 993–94 (finding irreparable harm to plaintiffs with disabilities in a case where a hospital would be shut down); *Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004) (finding likely irreparable harm to chronically ill indigent patients in the face of a hospital closure); *Baptist Health v. Murphy*, 226 S.W.3d 800, 813 (Ark. 2006) (finding irreparable harm to physicians when they were barred from practicing in a specific hospital).

### V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 12), is **DENIED in part.** Plaintiff's claims that Defendant violated Sections 3.1 and 3.3 are DISMISSED without prejudice and with leave to amend. The claim that Defendant violated Article 61 is DISMISSED without leave to amend.

**IT IS FURTHER OTHERED** that if Plaintiff seeks to amend the claims dismissed without prejudice in this Order, Plaintiff will have twenty-one days from the date of this Order to do so.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 11), is **DENIED**.

**DATED** this __23__ day of October, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT